IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GEORGE BROWN,                          :        Civil No. 3:19-cv-2229
                                       :
                Petitioner             :        (Judge Mariani)
                                       :
        v.                             :
                                       :
SUPERINTENDENT MARSH, *et al.*,        :
                                       :
                Respondents            :

## MEMORANDUM

Petitioner George Brown ("Brown") filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a judgment and conviction imposed in the Court of Common Pleas of Dauphin County, Pennsylvania. (Doc. 1). For the reasons discussed below, the Court will deny the petition.

## I.    Background

Brown was charged with robbing and murdering a male victim during the sale of illegal drugs on December 12, 2013. *See Commonwealth v. Brown*, 2016 WL 5832197, *1 (Pa. Super. Aug. 30, 2016). On July 28, 2015, defense counsel filed a timely motion to suppress Brown's statements to police during questioning. (*See* Doc. 9-2). On August 4, 2015, the trial court denied the motion. (*See id.*). Following a jury trial held from August 17 to 21, 2015, Brown was found guilty of second-degree murder, robbery, conspiracy to commit robbery, and carrying firearms without a license. *Commonwealth v. Brown*, No. CP-22-CR-0004546-2014 (Pa. Ct. Com. Pl. Dauphin Cty.). On October 20, 2015, Brown was

sentenced to life imprisonment on the murder conviction and concurrent terms of 2½ to 5 years' imprisonment on the robbery and conspiracy convictions. (*Id.*). The trial court imposed no further penalty on the firearms conviction. (*Id.*). Brown filed a direct appeal. *Commonwealth v. Brown*, 2023 MDA 2015 (Pa. Super.). On August 30, 2016, the Pennsylvania Superior Court affirmed the judgment of sentence. *Id.; see also Commonwealth v. Brown*, 2016 WL 5832197. On March 7, 2017, counsel for Brown filed a motion to reinstate Brown's right to petition for allowance of appeal to the Pennsylvania Supreme Court. *See Commonwealth v. Brown*, No. CP-22-CR-0004546-2014. On March 28, 2017, the trial court granted the motion. *See id.* However, a petition for allowance of appeal was never filed on behalf of Brown. *See id.*

Thereafter, Brown pursued relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. §§ 9541-9546, seeking a reinstatement of his rights to file a petition for allowance of appeal with the Supreme Court of Pennsylvania. (*See* Doc. 9-6). The PCRA court granted relief regarding the petition for allowance of appeal, and, on August 19, 2019, the Pennsylvania Supreme Court denied the petition. (*See id.; see also Commonwealth v. Brown*, 143 MAL 2019 (Pa. 2019)). In the PCRA petition, Brown also set forth the following claims: the prosecution failed to inform Brown of plea agreements in exchange for the testimony of a witness, and trial counsel was ineffective for failing to investigate forensic evidence to develop impeachment evidence, failing to hire a forensic expert, failing to preserve a weight to the evidence claim, and failing to file a petition for

allowance of appeal.  (*See* Doc. 9-6).  The PCRA court found that Brown was not entitled to

relief on these claims.  (*Id.*).  Brown failed to further pursue state court remedies and failed

to file an appeal with the Pennsylvania Superior Court with respect to these claims.

Brown then filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §

2254.  (Doc. 1).

## II.   Habeas Claims Presented for Federal Review

Brown seeks habeas relief based on the following grounds:

A.   Ground One:  The trial court erred in failing to suppress his statements to
     police officers.

B.   Ground Two:  The trial court committed an error of law in allowing the verdict
     to stand because the finding of guilt was against the weight of the evidence.

C.   Ground Three:  The Commonwealth committed a *Brady*[1] violation by failing to
     inform him of plea agreements in exchange for the testimony of a witness,
     and trial counsel was ineffective for failing to raise a *Brady* violation.

D.   Ground Four:  Trial counsel was ineffective for failing to investigate forensic
     evidence to develop impeachment evidence and failing to hire a forensic
     expert.

(Docs. 1, 14).

## III.   Legal Standards

The statutory authority of federal courts to issue habeas corpus relief for persons in

state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and

---

[1]   *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding "that the suppression by the prosecution of
evidence favorable to an accused upon request violates due process where the evidence is material either
to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

Effective Death Penalty Act of 1996 ("AEDPA").  A habeas corpus petition pursuant to §

2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his

confinement.  *Preiser v. Rodriguez*, 411 U.S. 475, 498-99, 93 S.Ct. 1827, 36 L.Ed.2d 439

(1973).  "[I]t is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions."  *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct.

475, 116 L.Ed.2d 385 (1991).  Rather, federal habeas review is restricted to claims based

"on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties

of the United States."  28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 68.

**A.     Exhaustion**

Habeas corpus relief cannot be granted unless all available state remedies have

been exhausted, or there is an absence of available state corrective process, or

circumstances exist that render such process ineffective to protect the rights of the

applicant.  *See* 28 U.S.C. § 2254(b)(1).  The exhaustion requirement is grounded on

principles of comity in order to ensure that state courts have the initial opportunity to review

federal constitutional challenges to state convictions.  *See Werts v. Vaughn*, 228 F.3d 178,

192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full

opportunity to resolve any constitutional issues by invoking one complete round of the

State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845,

119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).[2]  Respect for the state court system requires that the petitioner demonstrate that the claims in question have been "fairly presented to the state courts." *Castille v. Peoples*, 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989). To "fairly present" a claim, a petitioner must present its "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999); *see also Nara v. Frank*, 488 F.3d 187, 197-98 (3d Cir. 2007) (recognizing that a claim is fairly presented when a petitioner presents the same factual and legal basis for the claim to the state courts).  While the petitioner need not cite "book and verse" of the federal Constitution, *Picard v. Connor*, 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), he must "give the State 'the opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" before presenting those claims here, *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (quoting *Picard*, 404 U.S. at 275, 92 S.Ct. 509).

### B.    Merits Standard

Once a court has determined that the exhaustion requirement is met and, therefore, that review on the merits of the issues presented in a habeas petition is warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d).  Section 2254(d) provides, in

---

[2]    In Pennsylvania, pursuant to Order 218 of the Pennsylvania Supreme Court, review of criminal convictions and post-conviction relief matters from the Pennsylvania Supreme Court is discretionary and "unavailable" for purposes of exhausting state court remedies under § 2254. *Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004).  Thus, to exhaust state remedies, a Pennsylvania prisoner need appeal only to the Pennsylvania Superior Court.

pertinent part, that an application for a writ of habeas corpus premised on a claim previously

adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  To establish that the decision was contrary to federal law "it is not

sufficient for the petitioner to show merely that his interpretation of Supreme Court

precedent is more plausible than the state court's; rather, the petitioner must demonstrate

that Supreme Court precedent requires the contrary outcome." *Matteo v. Superintendent*,

171 F.3d 877, 888 (3d Cir. 1999).  Similarly, a federal court will only find a state court

decision to be an unreasonable application of federal law if the decision, "evaluated

objectively and on the merits, resulted in an outcome that cannot reasonably be justified

under existing Supreme Court precedent." *Id.*

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a

state court's findings of fact are correct.  A petitioner may only rebut this presumption with

clear and convincing evidence of the state court's error. *Miller-El v. Cockrell*, 537 U.S. 322,

341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual

issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual

decisions); *Matteo*, 171 F.3d at 888; *Thomas v. Varner*, 428 F.3d 492, 497-98 (3d Cir.

2005).  This presumption of correctness applies to both explicit and implicit findings of fact.

*Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." *Mastracchio v. Vose*, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); *Porter v. Horn*, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); *see also Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000); *cf. Jackson v. Virginia*, 443 U.S. 307, 316 (1979). "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction." *Breighner v. Chesney*, 301 F. Supp. 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[3]). Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. *Porter*, 276 F. Supp. 2d at 296; *see also Williams v. Taylor*, 529 U.S. 362, 408-09 (2000); *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir. 2001). Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence

---

[3]   "If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination." 28 U.S.C. § 2254(f).

therein should the federal habeas court overturn a state court's factual determination.

*Porter*, 276 F. Supp. 2d at 296; *see also Williams*, 529 U.S. at 408-09.

## IV.   Discussion

### A.   Ground One

Brown maintains that the trial court erred in failing to suppress statements he made to investigating police officers in violation of *Miranda*.[4]  The Court finds that the state court's refusal to suppress Brown's statements did not violate his rights under the Fifth Amendment, and thus was not contrary to, or an unreasonable application of, clearly established federal law.

Brown raised this issue on direct appeal.  In addressing this claim, the Pennsylvania Superior Court found as follows:

> Brown raises a single issue in this appeal: "Did the trial court commit an error of law when it denied [Brown's] motion to suppress evidence regarding a custodial statement to police, as said statement was obtained in violation of [Brown's] constitutional right against self-incrimination?"  Brief For Appellant, at 5.
>
> . . .
>
> The record supports the following findings of fact made by the trial court:
>
> > A suppression hearing was held on August 4, 2015.  The first witness was Detective John O'Connor with the Harrisburg City Police.  In connection with the murder, Detective O'Connor was assisting multiple detectives with a search warrant for a home in the 2200 block of Logan Street, which turned out to be vacant.  A neighbor told the detectives that Sam Sims,

---

[4]   *Miranda v. Arizona*, 384 U.S. 436 (1966).

[Brown]'s brother, lived on the 2100 block of North Fourth
Street, and gave them a good description of the home. The
detectives went to the house and were told that [Brown] was
not there. [Brown]'s mother and brother were there, and the
detectives told the mother what they knew about the case.
[Brown]'s mother called [Brown] and, while the detectives were
still in the home, [Brown] came back to the house. Detective
O'Connor testified that [Brown] was friendly, sober, talkative,
and willing to help out. Detective O'Connor told [Brown] that
Detective Richard Iachini wanted to talk to him about a
homicide and asked if he would be willing to come to the police
station with them. [Brown] said 'sure.' Specifically, Detective
[O'Connor] knew that an individual was shot inside of a vehicle
in the 2100 block of North Fourth Street and a cell phone was
recovered in the car next to the victim. The cell phone
belonged to [Brown].

Detective O'Connor asked [Brown] if he wanted a ride to the
police station, to which [Brown] replied, 'sure.' Detective
O'Connor and Corporal Olivera drove him to the police
department in an unmarked car, with no handcuffs, and no
'cage' between the front and back seats. [Brown] sat in the
back seat with Detective O'Connor, and the tone of the trip to
the station was 'friendly and cordial.' When they arrived at the
station, they took [Brown] to a conference room. Besides
[Brown], only Detective O'Connor and Detective Iachini were
present. Detective O'Connor testified that the lead detective,
Detective Iachini, was the one doing the questioning. After
some initial questioning, Detective Iachini started inquiring
about the cell phone, and it was at that point that Detective
O'Connor issued [Brown] his *Miranda* rights. When asked why
he did not administer [Brown] his rights initially, Detective
O'Connor testified that he 'felt he was more of a witness than
he was an accused.' Following the *Miranda* warnings, [Brown]
indicated that he did not wish to speak any further. The
interview was terminated.

Detective Iachini also testified at the suppression hearing. His
testimony was consistent with Detective O'Connor's testimony.
He stated that 'the initial questions were kind of just some

background stuff. . . informal.  [O]nce I started asking [Brown]
about the phone is when we decided to Mirandize him.'  After
the interview was terminated, Detective Iachini made a call to
the District Attorney's Office and the District Attorney told him to
release [Brown] at that point.

Pa.R.A.P. 1925 Opinion, at 2-3.

The Commonwealth contends that the suppression record demonstrates, and
the trial court properly found, that Brown was not in custody, and therefore the
trial court properly denied Brown's motion to suppress.  We agree.  "A person
is in custody for *Miranda* purposes only when he is physically denied his
freedom of action in any significant way or is placed in a situation in which he
reasonably believes that his freedom of action or movement is restricted by
the interrogation." *Commonwealth v. Johnson*, 727 A.2d 1089, 1100 (Pa.
1999).  The United States Supreme Court has elaborated that, in determining
whether an individual is in custody, the "ultimate inquiry is . . . whether there
[is] a formal arrest or restraint on freedom of movement of the degree
associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322
(1994).  The question of custody is an objective one, focusing on the totality
of the circumstance, with due consideration given to the reasonable
impression conveyed upon the person being questioned. *Commonwealth v.
Gwynn*, 723 A.2d 143, 148 (Pa.1998), *cert. denied*, 528 U.S. 969 (1999).
Pennsylvania courts have held multiple times that a suspect is not in custody
when he voluntarily accompanies officers to the police station and answers
their questions under non-coercive circumstances.  *See Commonwealth v.
Luster*, 71 A.3d 1029, 1051 (Pa. 2013) (murder defendant was not subject to
"custodial interrogation" for *Miranda* purposes when he spoke to officer in
police car; defendant voluntarily accompanied officer to state police barracks
for questioning regarding victim's death, defendant was not handcuffed and
was accompanied by his sister, and defendant initiated conversation with
officer regarding events of prior evening); *Commonwealth v. Freeman*, 128
A.3d 1231, 1241 (Pa. Super. 2015) (murder defendant was not in custody,
and thus *Miranda* warnings were not required, when he made statements to
detectives regarding his involvement in home invasion, kidnapping, and
murder; defendant voluntarily accompanied detectives to police station;
detectives did not show, use, threaten to use force, transfer defendant against
his will, or restrain defendant; detectives were dressed in formal business
attire, drove unmarked sedan, had their firearms concealed, and reminded

defendant multiple times that he was not under arrest and was free to leave at any time).

Here, Brown came into contact with detectives at his home, where his mother had allowed a consensual search of the premises. The detectives introduced themselves and had a cordial, friendly conversation with Brown. They informed Brown that the lead detective in the matter wanted to speak with him about a homicide and asked him if he was willing to come to the police station. This was a request, not a demand. Brown voluntarily agreed to accompany the officers to meet with Detective Iachini at the police station. The detectives offered to give Brown a ride to the station, and Brown voluntarily accepted their offer. He was not placed in handcuffs, he entered the car of his own volition, and there was no cage in the car. His movement and freedom were not restricted in any way. Upon arrival at the police station, Brown voluntarily exited the car and walked into the conference room. The tone was friendly and cordial. When the interview turned to the fact that Brown's cell phone was in the car, the detectives gave Brown *Miranda* warnings. He invoked his rights, the interview stopped, and Brown walked out of the police station. As in Luster and Freeman, Brown was not in custody during the interview. Indeed, he was not in custody after issuance of *Miranda* warnings, because he promptly stated that he did not wish to speak further and left the police station.

While Brown labels his encounter with the detectives as an "interrogation", the fact remains that Brown consented to the interview and never had his freedom restricted. Brown argues that because the police contacted the District Attorney's office for direction on whether to charge Brown, he therefore was in custody. However, that is not part of the analysis. The District Attorney's opinion as to whether there was enough evidence to charge Brown is not relevant to whether the detectives restricted Brown's freedom of movement in a manner such that a reasonable person would not have felt free to leave. Because the detectives never restricted Brown's freedom of movement or threatened or coerced him in any way, he was never in custody, and his statements to the detectives were not subject to suppression.

For these reasons, the trial court properly denied Brown's motion to suppress.

Judgment of sentence affirmed.

*Commonwealth v. Brown*, 2016 WL 5832197, *1-3 (Pa. Super. Aug. 30, 2016) (footnotes omitted).

When presented with the facts of this claim, the state courts concluded that Brown was not entitled to relief.  A suppression hearing was held before the trial court and the court found that Brown was not under a custodial detention based on the following facts. The two investigating officers located Brown at his brother's house and asked if they could question him about a homicide.  Brown agreed to accompany them to the police station.  He was never handcuffed and was never told that he was under arrest.  When they arrived at the police station, Brown voluntarily exited the car.  The same two investigating officers questioned Brown in a conference room.  When the officers began questioning Brown about a cell phone that was in the car with the homicide victim, the detectives gave Brown *Miranda* warnings.  Brown invoked his rights, the interview stopped, and he walked out of the police station.

The trial court found that based on the totality of the circumstances, the interview of Brown was not a custodial interrogation and the Superior Court affirmed.  In reaching this determination, the state courts determined that Brown willingly and voluntarily accompanied the police to the station, he left the station without restrictions after he informed police that he no longer wished to speak to them, the police did not use any restraints or threats, and the conversation was friendly and cordial.  Therefore, the state courts properly found that

*Miranda* warnings were not required, and that the trial court did not err in not suppressing the statements.

*Miranda* serves to exclude from trial statements made by a defendant during a custodial interrogation. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Thus, an individual's *Miranda* rights apply only when that individual is "in custody" and subjected to "interrogation." *Illinois v. Perkins*, 496 U.S. 292, 296 (1990). In determining "whether an individual is in custody, the ultimate inquiry is 'whether there is a formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest.'" *Reinert v. Larkins*, 379 F.3d 76, 86 (3d Cir. 2004) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (internal quotation omitted)). When the individual has not been openly arrested when the statements are made, "'something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates they would not have heeded a request to depart or to allow the suspect to do so.'" *Id.* (quoting *Steigler v. Anderson*, 496 F.2d 793, 799 (3d Cir. 1974) (internal quotation omitted)). "Interrogation" for *Miranda* purposes includes those words and actions "that the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

Here, Brown was not subjected to the type of custodial interrogation that triggers *Miranda*. Brown was not under arrest. He voluntarily accompanied police to the station, he was not placed in handcuffs, he entered the car on his own volition, there was no cage in

13

the car, he voluntarily exited the car at the station and walked into the conference room, the

officers never indicated that Brown was under arrest, and he freely walked out of the police

station.  Moreover, there is no evidence to suggest that Brown was restrained in any way

from breaking off the encounter, let alone restrained to a degree associated with a formal

arrest.  The state courts' decisions were neither contrary to, nor involved an unreasonable

application of clearly established federal law as determined by the Supreme Court of the

United States.  Further, the decisions were not based on an unreasonable determination of

the facts in light of the evidence.  Accordingly, the Court will deny this claim.

### B.    Grounds Two, Three, and Four

To properly exhaust his state remedies, Brown was required to fairly present his

claims to the state court, either on direct appeal or by collateral review.  *See Castille*, 489

U.S. at 349-50; *Blasi v. Attorney General of Pa.*, 30 F. Supp. 2d 481, 487 (M.D. Pa. 1998).

As stated *supra*, the Pennsylvania Superior Court noted that Brown only raised "a single

issue" on appeal: "Did the trial court commit an error of law when it denied [Brown's] motion

to suppress evidence regarding a custodial statement to police, as said statement was

obtained in violation of [Brown's] constitutional right against self-incrimination?"

*Commonwealth v. Brown*, 2016 WL 5832197, at *1.  It is quite clear that Brown failed to

raise grounds two, three, and four—a weight of the evidence claim, that the prosecution

committed a *Brady* violation, and that trial counsel was ineffective—in his direct appeal.  It is

also clear that Brown did not complete his collateral review proceedings with respect to

these claims.  These claims are thereby defaulted.  *See Coleman v. Thompson*, 501 U.S.

722, 750 (1991); *Sistrunk v. Vaughn*, 96 F.3d 666, 673 (3d Cir. 1996) (concluding, "if the

final state court presented with a federal claim refuses to decide its merits based on an

established state rule of law independent of the federal claim and adequate to support the

refusal, federal habeas review is foreclosed").

Brown's failure to timely and properly pursue these claims at the state level

constitutes an independent and adequate state ground sufficient to support a procedural

default of the claim.  *See Barnhart v. Kyler*, 318 F. Supp.2d 250 (M.D. Pa. 2004).  Brown is

not entitled to federal habeas review of these claims unless he can meet his burden of

establishing "cause for the default and actual prejudice as a result of the alleged violation of

federal law or demonstrate that failure to consider the claims would result in a fundamental

miscarriage of justice." *Coleman*, 501 U.S. at 750; *Norris v. Brooks*, 794 F.3d 401, 404 (3d

Cir. 2015).  Brown fails to acknowledge his procedural default of these claims and fails to

allege any cause and prejudice to excuse it.  (*See* Docs. 1, 14; *see also Teague v. Lane*,

489 U.S. 288, 298 (1989) (holding that the petitioner's failure to allege cause for his default

precluded federal habeas review of a defaulted claim)).  Nor is there any indication that a

failure to review these claims will result in a fundamental miscarriage of justice.

Consequently, Brown is precluded from pursuing federal habeas corpus relief with regard to

the claims raised in grounds two, three, and four.

Furthermore, with respect to grounds two, three, and four, any attempt by Brown to exhaust his state remedies at this time would be futile because these claims are procedurally defaulted due to waiver of the claims and expiration of the PCRA statute of limitations. *See* 42 PA. CONS. STAT. § 9544(b) ("For purposes of this subchapter, an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding"); 42 PA. CONS. STAT. § 9545(b) ("Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final"). Because Brown is in procedural default for failing to comply with the state filing requirements, the merits of grounds two, three, and four—the weight of the evidence claim, the *Brady* violation claim, and the ineffective assistance of trial counsel claims—need not be considered here. *See Coleman*, 501 U.S. at 750.

## V.   Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are

adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S.

322, 327 (2003).  Additionally, as the Supreme Court has explained,

> [w]hen the district court denies a habeas petition on procedural grounds
> without reaching the prisoner's underlying constitutional claim, a COA should
> issue when the prisoner shows, at least, that jurists of reason would find it
> debatable whether the petition states a valid claim of the denial of a
> constitutional right and that jurists of reason would find it debatable whether
> the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Brown fails to demonstrate that a certificate

of appealability should issue.

## VI.  Conclusion

The Court will deny the petition for writ of habeas corpus pursuant to 28 U.S.C. §

2254.  A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: October   12, 2022